Justices, my name is Fred Atchison and I'm from Reno, Nevada. I was appointed under the Criminal Justice Act to represent Mr. Kranovich. In the brief that was filed in this case, there are three assignments of error and two relating to sentencing for a total of five. The first position that we offered related to the nature of the charge itself and whether or not there was a nexus, a sufficient federal nexus. This would be your section 666 argument? Yes. The Supreme Court is going to take a look at this in Sabree on March 3. What is your position as to whether we need to wait for the Supreme Court guidance? I think that it's almost incumbent upon all of us to do that in a case such as this. The Ninth Circuit hasn't addressed the issue. There is a split. We have ways of getting around deciding cases at times, but your position is that I take it that since we're not sure what the Supreme Court is going to do with Sabree, that we ought to wait at least until then. Is that right? I believe so. If we got either Sabree tells us or we figure out ourselves after Sabree, the nexus argument, the question I have really goes to the $10,000 and receipt of benefits. To me, that's the most troublesome question here because we don't have much guidance. The one thing that occurs to me is I think of cash basis taxpayers and receipt of benefits. In other words, did you get the money or did you not get the money that year? We're all familiar with that. What do you think is the closest analog for us to look to so we could figure out what those words mean in the context of this statute? Well, Judge Reed felt that the allocation was the benefit, I would assume. And I don't think it really can the way that that was structured because in this case, Lander County never received an allocation of money. All they received was a total aggregate sum that other people could tap. It was never Lander County that would tap the money. What would happen is a person would buy a bulletproof vest and they would get half of the money back for the purchase of the vest. But it didn't have to be from the Sheriff's Department? Wasn't the $12,700? No, it had to be for individual deputies or whomever in the Sheriff's Department. So the $12,700 was an allotment for the Sheriff's Department? Well, it was an allotment for the purchase of bulletproof vests. And I don't know if it was exclusively limited to Sheriff's Department. There may have been other people within the department. But I don't think that that's the linchpin of the argument here. I'm a trial attorney and I'm given an indictment. And the indictment tells me that the element that the government says they can show is that the benefit was received of in excess of $10,000. And I went out there to investigate the case based upon the indictment. And that was the major flaw that I saw in this case, was that there were four or five different I guess the question is, if the pot of money is there, from what you could draw, is that enough? Or do we look at the fact that only, you know, one or two sheriffs went out and bought a bulletproof vest that year, so you only got a few thousand dollars that year? In other words, is it the possibility that you, if everyone in the Sheriff's Department had gotten a new vest and spent $12,000, then we wouldn't have a question, would we? No. Okay. But here, the only difference is they could have done that. In other words, the money, it's like having money in your bank account. They could have drawn down their whole bank account that year, couldn't they? No. No. They have to. It's not like having a bank account. First place, the documents themselves say that it only really exists if the money's available. So it's somewhat illusory to begin with. It's not segregated in any way. It's out of the general fund. So it's an allotment. It's a potential allotment. Now, it was way over allotted anyway. In Battle Mountain, a town of 5,000 people, you're going to have a few deputies that cover the territory, that drive around in the cars and wear bulletproof vests and such. And those are the people that ordered them. Can I just go back to something you said? You said it actually wasn't a real allotment, but only a potential allotment. What does that mean? Well, it means that you can have up to so much money if a number of people go out and purchase the vests. And the allotment itself of $12,700, if each individual is getting reimbursed the sum of about $250 to $500, you don't even have that many deputies in the entire department. But if you were a parent and you gave your kid an allowance of $12,000, you said, I have, you have this allowance of $12,000. But you have to draw down on it. In other words, when you need stuff, you come ask me, then I give you the money. Would the kid have received the benefit of $12,000 upon you giving them their allowance? No, you can't make any plans for the money. You can't. It's not as though it's your money until until you submit the necessity. I don't think it's a very good analogy, because under this program, you only have the ability to collect 50% on whatever you purchase. But the statute itself, 666B, has pretty clear language. First place, it contains an amount. But then it says receives. It used the words receive. It says receives a benefit. So the question is, was this a benefit? Yeah, receives a benefit. Let me ask you this. Do you have on your checking account that backup line of credit? So if you overdraw, the bank pays your check? Let's assume for the moment that that exists. Okay. Maybe I have it. I don't know. You say they give you a $1,000 overdraw privilege. Isn't that a benefit that they're giving you? Oh, I think you pay for it. Well, but is it still a benefit? Yes. I have the unbridled ability to go ahead and overdraw my account. Well, didn't they have the unbridled ability to buy bullproof vests and then submit proof that they bought the vest to get the 50% reimbursement? Yes. And so if they had bought all these vests to say, hey, look, let's get vests for the next $24,000 worth of vests so they get the 50% and they submitted that claim, wouldn't it have been paid? Well, I look at it this way. What's the benefit? The benefit is- Let me ask you this. Is there anything in the record that indicates that it would not have been paid? No. And so really, isn't that a benefit? No. What's the benefit? The benefit is to get officers with bulletproof vests. That's the benefit. The benefit to the officers- Compensation. The benefit to the officers in the county is to get officers protected. That's the benefit. The benefits in this case, during the jurisdictional period alleged in the indictment, came out to under $1,000, with the total amount of benefit received for all the officers for all the time during the period is $1,300. So if we're going to look at the plain reading of the statute- Inquate benefits such as insurance and guarantees, correct? In the statute, when it defines benefits, it includes grants, insurance, guarantees, right? Yes. So say you get insurance expressly under the statute, but you never make a claim. It's not a benefit received. But under the statute, it clearly is. It says insurance is a benefit. It's not received, though. In the indictment, they allege that there's received benefits in excess of $10,000, and there were never received benefits. I went out there and investigated the case, and it didn't exist. But insurance is not the payment. Insurance is the guarantee that if you make a claim, it will be paid. In this case, it's benefits received under a grant. The benefits received under a grant were $1,300. The benefit is to get protective clothing on the officers. The benefit to the state or to the county or whatever isn't an allocation. It's the protection. That's the benefit. Why don't we hear from the government, and we'll give you a little bit of time for rebuttal. Thank you. Good morning. May it please the Court. I'm Ron Racio, Assistant U.S. Attorney from Reno. Sir, was the money allocated, the $12,000? So if they all bought the vest day one and that they would get the $12,000? That's my understanding, and that was a testimony of Sergeant Quick at trial. We had the documentation showing a message coming in that the money was available, and they started drawing on it. They had up to four years to expend this grant, but the money was available to kind of jump around a bit. I think let's stick with this issue because this is the one that we're Grant could be a benefit, but whether it was actually received by the Sheriff's Department, it boils down to our interpretation of benefit as defined by the statute and the word received. And their argument is, well, we didn't get it, actually. I mean, we had the potential to get it, but we actually didn't receive that money in that particular year. Why doesn't that make common sense of the word receive? Because of the language that is in the statute, which also includes grant, load, guarantee, and insurance. I would look at this along the lines of a home equity loan, perhaps, where the bank is guaranteed you got an X amount of money that you can draw against. You've got the benefit, whether you draw or not. In another context, I would look at it in the form of a person who's applied to university and has said he'll be given or she'll be given financial aid when they check in. They can make plans. They can rent apartments. They can rent a moving truck because they've received this benefit. They know they've got it, and so they can draw against it. Until they actually get there and expend it, they haven't physically had the cash in hand or bills paid, but they have that benefit. They've received that. Is there, if you need to show not only the benefit being out there, but a necessity in order to draw on it, does that impact whether or not it's actually received? In other words, it's a conditional benefit. It's conditional only in the sense, I believe, that if it is not utilized for the time period, it will disappear. But the testimony of Sergeant Quick, as I recall, who wrote the grant, was that this money was guaranteed to him for four years. They had up to four years to do it. The purpose, obviously, of the grant rather than benefit, the purpose was to get protective gear for officers. The benefit was that these funds are available so you can meet this purpose to protect the officers. You have to move that received means benefit. The statute doesn't say benefit as received, right? So it's the interpretation that you can receive a benefit to qualify. Over the last 30 years plus that I've been watching these cases, there's been an increased push to federalize what are normally state crimes, and I suppose he could have been indicted under a state crime. So there should be at least some valid tag into the federal interest. Received would be one way to cut it off. You don't receive money until you receive. It's something you can spend. You have to read in benefit in order to get the jurisdiction. Why should we read in benefit? Why? What is the push to do that? Well, in this particular case, if you want to stay strictly on the facts of this case, rather than generic, he was stealing federal money. He was convicted of 641 theft of federal funds. So therefore, a nexus, if it's required, is certainly met right there. So we're going back to the jurisdictional issue because of the many statute limitations. I assume your argument essentially is then that in other statutes such as welfare fraud, the legislative intent has been in the Supreme Court has approved that there to be construed broadly because of the federal interest of following its own funds and doing its own investigation. And I take it that would be your reason why we can expand the interpretation of statute. I think a fair interpretation in the intent of Congress is to ensure that federal funds are properly utilized. And as long as there's some in this particular case, it was kind of factually unique under the laws of Nevada. Apparently, when the sheriff, who was a suspect, tells the state investigators to stay out in the D.A. is kind of involved in a case, there's really nothing anyone can do other than pick up a federal investigation factually. So that's somewhat how we got into it. Yeah, I mean, the federal nexus doesn't bother me so much as obviously they put in the $10,000 so that there would at least be some floor before the federal government jumped in to these things. Well, I believe it would require a narrow reading of the benefit received to say you actually have to have cash in hand, because in a general context of receiving a benefit, we go down and we enter into purchase contracts on houses. We make all sorts of commitments and serious matters of our life based upon the promise that somebody's going to fund it down the road, that it's there and we can draw against it. We've got a benefit and that's what we act on. In this particular case, had the grant not come through, had it still been conditional to the point where only if the money is received or available, that might be a colorable argument. I believe it's a stretch to say that the money comes out of a general fund that may not be there. At the risk of being somewhat flip, I don't know the federal government to have ever been short of money on anything they want to fund. The money comes out, there may be an eventual delay while you're waiting for a certain bill to go through Congress or whatnot, but in this particular case, there was a grant procedure followed. They asked for $25,000, I believe, which was the estimate to properly equip all officers in the grant procedure, was they would get half of it, in this case $12,500, and they'd have to come up with the other money somewhere. But it was there, the benefit was there. Had they not got the approval of the grant, then this statute wouldn't have applied, there'd have been no benefit within the one-year mini statute of limitations. Let me ask you, if you had a federally funded college scholarship that was for $21,000 for three years, so you get $7,000 a year, and they tell you on day one you get $21,000, would you meet the $10,000 threshold in year one? If you're defining the term benefit, yes. But what about year two then? You'd already received the benefit, it continues to go with you, you received the benefit in year one. Once you became entitled to the money, you had received the benefit. Now this says in any one year. So my question is, if you get this, I give you $7,000 this year, but you're saying, well, actually, overall I'm entitled to $21,000, so this year I've gotten in excess of $10,000 benefits. And I understand that argument. So that would mean, okay, I could prosecute you this year if you do something bad. Now it's next year. I understand. And so then I'm now in the third year, so I'm wondering, well, is every year in excess of $10,000? To go back to your scholarship aspect, I gave you the wrong answer on that. If you can only get $9,000 a year, obviously you've got a benefit, but it's limited at $9,000. It differs from this case where you could get the whole thing in one year. Okay. That's the difference. So in other words, it's the potential. It's the potential. You have the benefit that if all the officers had showed up with their portion on that day and said, I want my grants, it would all come in in one year, the money was available, they're home free. Who's the money paid by for the Bulletproof Vest? Would the individual officers buy it or? The individual officers buy the vest and then they turn in the paperwork and they're reimbursed from this fund. So let's say we go down the road on this $12,000 of the police money. They draw down a few thousand this year. So if next year there's somewhere less than $10,000 to be had, would that mean there would be no jurisdiction under this statute? Absolutely correct, Your Honor. The benefit would have been received in the first year. If they didn't get the benefit in the first year, we run into that one-year mini statute that exists in 666. But if they only spent $1,000, so they had $11,000 left, would there be jurisdiction in year two? You might be able to argue that under the particular facts that they received an actual cash that year, they got the benefit the first year, they got the actual cash the second year. Can I follow up on something you were saying? The officer buys the vest. So the officer pays, let's say it's a $200 vest. They pay the $200 and then they make the claim through the Sheriff's Department to this federal agency? Right. I believe it was the Office of Justice. And who does the Office of Justice, whatever, make the check payable to? The Sheriff's Department or to the officer? I would have to speculate to answer that, Your Honor. I think that since the grant is to the Sheriff's Department to run it out through to the individual deputies, that the check would probably go to the Sheriff's Department. But it's speculation. Well, but if it went to the officers, would there be a benefit to the Sheriff's Department? Yes. They now have protected officers who have got the benefit of the statute and the grant. Thank you. Mr. Atchison, we'll give you one minute for rebuttal. Thank you, Your Honor. We're beyond our time, but... I was, I'm a trial hack and I was looking at count one a long time ago in preparation for trial. And it says, it has time requirements in here that specify receiving in the one-year period beginning July 1st, 2001, benefits in excess of $10,000 under the Bulletproof Vest Partnership Grant Program. Now, I take my marching orders from this indictment. And I went out to check that out and found out that they had not received that money. Now, under the government's argument, there never had to be a single expenditure, just the allocation, not a dime. And in this case, I went, it took a little bit of investigation to find out that there were five allocations. And within the period that they're talking about, it was under $1,000. So this is the sort of, it's almost worse having this indictment this way in conjunction with the statute and 666B, which basically tells a trial attorney and puts a trial attorney on notice. This is what you have to do. This is what we are alleging. This is what we're going to show. And you have to show us that we're wrong. And so it's almost deceptive to send an attorney and an investigator out under these marching orders to Battle Mountain to go through the records and find out that it isn't proved and to come back. I think we've now gotten pretty stark relief, the two real clear sides. And we'll have to figure out the interpretation of the statute here. So it's a dead horse. We appreciate the arguments when the case of the United States versus Kranovich is submitted. Thank you. Next case for argument is Dale versus Ashcroft. Thank you. You may proceed. Thank you. Good morning. May it please the court. Joseph Siguenza for petitioner. This immigration asylum case this morning presents... I guess would you back up? Your name again is? Joseph Siguenza. S-I-G-U-E-N-Z-A. Thank you. We just happened to have a different name on our paper. So I wanted to get your correct name, Mr. Siguenza. Thank you very much. The real problem I have here is whether your client, whether the administrative law judge or the immigration judge is clearly wrong in her credibility determination as to whether your client is a farmer. And if it's questionable as to whether he's a farmer, it's questionable as to whether he was beat up so he'd give his land back to the native Fijians. Other than his say-so and his sister-in-law's, it was his sister or sister-in-law's testimony, there's no pictures, nothing to indicate that he ever was a farmer. Is there? Admittedly, there are not, Your Honor. However, we believe that the IJ's adverse credibility finding as to whether or not he was a farmer, as opposed to some other occupation, was not supported by substantial evidence. Could you keep your voice up, please? Sorry. My phone will pick you up if you speak up. Thank you. Petitioner's position on that would be, Your Honor, that his testimony is uncontradicted and testimony by itself can be sufficient to establish eligibility for asylum, if you will. Corroborating documentary evidence does not necessarily need to be present in a particular case. Except if the immigration judge doesn't find it credible. Certainly. But in this particular case, Your Honor, Petitioner submits that her adverse credibility finding was not supported by substantial evidence. And she did not state a legitimate articulable basis for the adverse credibility finding as to whether or not he was a farmer. Is there, she stated the passport issue, which seems to be contrary to our case law, about whether that can be a basis for discrepancy. And then she cited the marriage certificate. Was there any other basis the IJ cited for finding lack of credibility on the farmer issue? I don't believe so, Your Honor. And then that's of concern to the Petitioner here. We believe that he testified that he had cleared land for two years prior to engaging in farming on his own for a period of eight years before he attempted to renew his land lease and ran into difficulties with the native Fijians and the NLTB and has testified that he experienced several incidents at the hands of the natives, including assaults and robberies and harassment of himself and his family, attempted rape of his wife, all in attempt to farm the land that he was leased and in an attempt to renew the lease with the NLTB. We believe that the IJ's concerns about a different occupation, so to speak, listed on his marriage certificate as, I believe, driver and on his passport as a sales agent don't go to the heart of the matter. We believe that those are side issues. When was the marriage certificate in relation to these events, time-wise? The IJ apparently had concern that a marriage certificate that was issued 15 years prior to the events in question listed his occupation as a driver. And I believe Petitioner succinctly testified without contradiction or without contrary evidence that he happened to drive a van while he was helping his father some years previous to farming on his own and that it was a side job. Farming is seasonal in Fiji and he used that to supplement his income or to help out the family. And it was only a part-time endeavor, if anything. So it was six months, right? For a period of no longer than six months, I believe Petitioner testified to. Was it just one six-month period or six months a year? The record is not clear on that, Your Honor. Didn't he testify, though, that he never had any other job but farming? Yes, he did. So that contradicts that statement, correct? Well, we believe that it's not necessarily a contradiction. If it is an inconsistency, it's a minor inconsistency. I believe the heart of the matter is that he was a farmer. It's flatly inconsistent with his contention that this employment would consume up to six months of the year. Yes. What you're explaining to us is that he had one story and the IJ found other contradictory information, flip-flopping of testimony.
judges: Wallace, McKeown, Moskowitz